**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| JOHN R. ARCHEY,            ) | |
|              Plaintiff,          ) | |
|    v.                               ) | |
|                                       ) | Case No. 07-2122 |
| MICHAEL J. ASTRUE,       ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,                     ) | |
|              Defendant.        ) | |

# REPORT AND RECOMMENDATION

In October 2005, Administrative Law Judge (hereinafter "ALJ") Joseph Warzycki denied Plaintiff John Archey's application for social security disability insurance benefits. In February 2006, the Appeals Council returned the case to the ALJ. In September 2006, the ALJ conducted a second hearing and again denied Plaintiff's application. The ALJ based his decision on findings that Plaintiff's porphyria cutanea tarda (hereinafter "PCT") did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and Plaintiff's residual functional capacity did not allow him to perform any past relevant work, but Plaintiff had acquired transferable skills permitting him to perform other work available in the national economy.

In July 2007, Plaintiff filed a Complaint (#4) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying benefits. In November 2007, Plaintiff filed a Motion for Summary Judgment or Remand (#12) and in February 2008, Defendant filed a Memorandum in Support of Summary Affirmance (#16), which the Court deems to be a motion. After reviewing the administrative record and the parties' memoranda, the Court now recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **GRANTED** and that the case be remanded for an award of benefits.

# I. Background

## A. Procedural Background

Plaintiff applied for social security benefits in May 2003, alleging disability beginning November 5, 2002. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. Plaintiff appealed and ALJ Warzycki held a hearing in September 2005. Plaintiff's attorney was present at the hearing. In October 2005, the ALJ denied Plaintiff's application for benefits based on his finding that Plaintiff was not disabled within the meaning of the Social Security Act. In February 2006, the Appeals Council returned the case to the ALJ with instructions to update Plaintiff's medical records, reconsider Plaintiff's residual functional capacity (hereinafter "RFC"), and obtain additional details from the vocational expert (hereinafter "VE") regarding Plaintiff's transferable skills. After another hearing in September 2006, the ALJ filed a decision denying benefits based on findings that, although Plaintiff's hepatitis C, PCT, and hypertension constitute severe impairments, none meets or equals any of the impairments listed in the Regulations, and Plaintiff's RFC and transferable skills permit him to perform jobs available in significant numbers in the national economy. In April 2007, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court.

## B. Plaintiff's Medical Background

Plaintiff was sixty years old in May 2003 when he applied for disability benefits, sixty-two years old at the time of the first hearing, and sixty-three years old at the time of the second hearing. He has completed one year of college and truck driving school. His past relevant work includes positions as a security guard, receiving clerk, and semi-truck driver. (R. 149, 483.) His past positions as a security guard and semi-truck driver were semiskilled positions, and his past job as a receiving clerk was a skilled position. (R. 149.) Plaintiff alleges a disability onset date of November 5, 2002, when he stopped working at Rural Transport because he was unable to maintain a full-time work schedule. (R. 442-43.) Plaintiff continued working part-time at a factory until February 2003, but was terminated for missing too many days of work. (R. 443.)

In his application for disability, Plaintiff stated that he was first diagnosed with hepatitis C and PCT in 1991, and that his PCT is progressive and requires more frequent treatment now than it did initially. (R. 125.)

Plaintiff's ailments include hepatitis C, PCT, hypertension, rheumatoid arthritis, and a cataract. Plaintiff underwent cataract surgery in August 2003 and he does not currently claim disability due to that ailment. (R. 184; #13, pp. 2-3.) He also states that his hypertension is controlled by medications. (#13, p. 3.) Therefore, only the impairments based on hepatitis C, PCT, and rheumatoid arthritis are currently at issue.

The following background is taken from the record, which includes medical records from February 2003 to September 2006.

In February 2003, Plaintiff was referred from the Danville VA hospital to the Indianapolis VA hospital to start treatment for his PCT. (R. 207.) The only treatment for PCT is to undergo therapeutic phlebotomies, which consist of drawing 500 ccs of blood from the patient in order to reduce the patient's total hemoglobin count. Plaintiff underwent thirty-six phlebotomies between April 2003 and August 2006. The record indicates that phlebotomies often cause the patient to feel weak for twenty-four to forty-eight hours following the procedure, and to experience fatigue and poor concentration, balance, coordination, and judgment. (R. 418-19.) The record shows that Plaintiff needs one day for treatment and one to two days to recover from the treatment, and he must be monitored for twenty-four hours following treatment.

Plaintiff generally undergoes phlebotomies once a month, but occasionally has undergone phlebotomies up to once a week for periods of four to six weeks. (R. 293; 244-50; 394-404.) At times Plaintiff has also gone several months without undergoing any phlebotomies. (R. 411 (from December 2005 to March 2006).) Plaintiff has talked to the VA social worker regarding having problems with transportation to and from the hospital. It is not clear from the record whether Plaintiff had no symptoms during the times he did not report for phlebotomies, could

not find transportation to the hospital, or did not undergo treatment for some other reason. (R. 363.)  Despite continuing phlebotomies, medical records indicate that Plaintiff experiences occasional skin lesions and blisters.  (R. 280; 287; 337; 364; 394; 411.)  Medical records also indicate that Plaintiff experiences fatigue and itching due to his PCT, sometimes as early as one week after a phlebotomy treatment.  (R. 191; 291; 319; 334-35.)  In August 2003, records from the Indianapolis VA state that Plaintiff's PCT has caused photosensitivity and hyperpigmentation.  (R. 205.)  Clinic records from November 2004 mention patchy hyperpigmentation covering Plaintiff's head, trunk, and arms.  (R. 286.)

In addition to phlebotomies, doctors have prescribed a shampoo as a body wash, topical creams, and antihistamines to reduce itching, and have recommended that Plaintiff use over-the-counter topical creams.  (R. 303; 334-35.)

In addition to PCT, Plaintiff has been diagnosed with hepatitis C and chronic liver disease.  (R. 177; 360.)  Plaintiff's PCT is secondary to hepatitis C, but has required much more extensive treatment.  At the time of the second hearing, Plaintiff's doctors were considering treating his hepatitis with Interferon injections, but had not yet started the treatment.

In September 2006, Plaintiff tested positive for rheumatoid arthritis and was referred to the Indianapolis VA for treatment.  (R. 422.)  Because the diagnosis was made the same month as the second hearing, there are no further medical records regarding this condition.  All other evidence about arthritis comes from Plaintiff's testimony at the hearings.

From 2003 to 2006, State agency doctors completed two consultative examinations and one RFC assessment describing their opinions of Plaintiff's impairments.  In August 2003, Dr. George Gindi and Dr. Mary Gindi completed a consultative examination, reporting that Plaintiff had been diagnosed with the blood disorder PCT in 1992 and that he also had hepatitis C, hypertension, and poor vision.  (R. 174; 177.)  This report states that Plaintiff has episodes of itching and skin ulceration once a year that are treated by phlebotomy once a week for six weeks. (R. 174.)

In September 2003, Dr. T. Arjmand completed a RFC assessment and Dr. Michael Colandrea agreed with that assessment in December 2003. This report opines that Plaintiff can occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk six hours of an eight-hour day, sit six hours of an eight-hour day, and he has no limits in his ability to push or pull. (R. 269.) Furthermore, Drs. Arjmand and Colandrea opined that Plaintiff can occasionally climb stairs, ramps, ladders, ropes, or scaffolds and can occasionally crawl. (R. 270.) The assessment indicates no manipulative or visual impairments and no communicative or environmental limitations. (R. 271-72.) The assessment states that Plaintiff required phlebotomies from April to May 2003, but that blood tests from June 2003 showed normal counts. (R. 275.) During April and May 2003, Plaintiff received phlebotomies once a week for five consecutive weeks. (R. 244; 246; 248; 250; 252.)

In May 2006, upon remand from the Appeals Council, Dr. Gindi completed a second consultative examination and RFC assessment. (R. 346-52.) Dr. Gindi observed that Plaintiff was scratching during the course of the examination and he complained of constant itching. (R. 346-47.) The report states that Plaintiff "was treated in the past with phlebotomy and [] is taking different medications, which does not control his itching." (R. 346.) Dr. Gindi completed an assessment of Plaintiff's limitations, finding that he can lift or carry ten pounds occasionally or frequently, stand at least two hours of an eight-hour day, and sit six hours of an eight-hour day. (R. 349-50.)

### C. Testimony at Hearing

At the time of the first hearing in September 2005, Plaintiff was sixty-two years old and lived alone. (R. 499.) He is a veteran and receives medical care through the VA. (R. 500.)

Plaintiff testified that he suffers from severe itching and heartburn immediately after waking up in the morning, which he attributed to the PCT. (R. 506.) He is able to read, watch television, microwave meals, and visit with friends. (R. 507.) His daughter does his laundry and cleaning, and a friend assists him with grocery shopping. (R. 508.) Plaintiff has a driver's

license, but does not drive or own a car because he is too tired and itches too often to drive. (R. 500.) Plaintiff testified that he does not go out in the sun because it causes his skin to burn. (R. 509.) He stated that his PCT affects his personal hygiene only when he has active sores and cannot wash the affected area. (R. 509.)

Plaintiff testified that he last worked at a factory; he worked for two to three months, but was laid off for missing too much work due to doctor appointments. (R. 502-03.) He also stated that itching and scratching interfered with his ability to keep up his pace while on the job. (R. 518.) Immediately before the factory job, he worked as a truck driver. He testified that he stopped working as a truck driver because he was too tired to complete deliveries on time and his schedule prevented him from making doctors' appointments or he would have to miss work for doctors' appointments. (R. 506.)

Plaintiff takes three medications for high blood pressure, and he testified that he will soon be needing Interferon shots for hepatitis C. (R. 509-10; 512.) He also uses over-the-counter ointments and Absorub for his PCT. (R. 509.) He testified that these ointments do not really relieve the itching and that he also takes sinus medications for that purpose. (R. 511.) Plaintiff did not testify regarding any side effects from these medications, but stated that his hypertension sometimes caused him to see black dots despite regularly taking his hypertension medications. (R. 511.) Plaintiff also testified that the hepatitis C has caused cirrhosis of the liver, which is not curable. (R. 512.)

Plaintiff next testified to the effects of his PCT. He stated that the PCT is caused by his liver not being able to cleanse iron out of his blood, and that it causes sores and blisters. (R. 513.) The PCT causes him to scratch constantly, sometimes so much that he makes himself bleed, and it requires him to stay out of the sun. (R. 517.) The treatment for PCT entails therapeutic phlebotomies where doctors extract 500 ccs (one pint) of blood at least once or twice a month, but sometimes as much as once a week for five or six weeks. (R. 514-15; 519.) Plaintiff can only receive phlebotomy treatments at the VA hospital in Indianapolis. (R. 515.) He testified that he can tell he needs a phlebotomy treatment when his face is sore, he starts

getting lesions in his ears, or the skin on his chest gets so dry that it cracks. (R. 521.) He either has a friend drive him to the hospital or takes the VA shuttle bus, and he is required to have someone with him after treatment until the following day to monitor him and make sure he does not pass out. (R. 520.) He testified that he usually recovers enough strength to move around by the afternoon following the treatment. (R. 521.) The treatment relieves itching completely for a few days and then the itching gradually worsens until the next treatment. (R. 522.)

The ALJ asked Plaintiff whether he has any additional functional limitations. Plaintiff responded that he has problems sitting or standing for long periods of time; he believes this is due to arthritis. (R. 515.) He can lift between ten and twenty pounds, stoop to pick something off the floor, and occasionally climb stairs. (R. 516-17.) Plaintiff testified that, although his hypertension is controlled by medication, it still fluctuates and he occasionally needs to sit down after periods of exertion. (R. 523.)

The ALJ next asked Plaintiff whether the statement in the State agency report dated August 2003, that Plaintiff gets episodes of itching and skin ulceration once a year, was accurate. (R. 174; 524.) Plaintiff responded that this statement is no longer accurate and he itches all year long, and that the itching requires him to receive phlebotomies at least once a month. (R. 524.)

Plaintiff's friend Terry Tyler testified next. Mr. Tyler testified that Plaintiff is especially fatigued after receiving treatment in Indianapolis, but that his itching and scratching does improve after the treatment. (R. 526.) He testified that Plaintiff scratches so much he recently broke a back scratcher in half, and that he scratches continuously whenever they are together. (R. 526-27.)

The VE, Ron Malik, testified next. After the VE outlined Plaintiff's past relevant work, the ALJ posed a hypothetical question asking the VE to consider an individual of Plaintiff's educational background and work experience, but limited to lifting and carrying ten pounds occasionally, five pounds frequently, sitting six hours of an eight-hour day, and standing occasionally. (R. 529.) Plaintiff's attorney objected to considering the position of dock

supervisor as past relevant work because Plaintiff stopped working in that capacity over fifteen years prior to the hearing. The ALJ noted this objection. (R. 529.) The VE testified that such a hypothetical individual would be precluded from performing all past relevant work, but would have acquired transferable skills from the freight clerk or receiving clerk position so that he could perform sedentary jobs in the shipping industry. (R. 530-31.)

Plaintiff's attorney asked the VE if a person who must miss four to six days of work a month due to therapeutic phlebotomies would be able to perform any of the work that the VE had identified. (R. 531.) The VE responded that all jobs would be eliminated if they were not covered by the Family Medical Leave Act. (R. 531-32.) Plaintiff's attorney then asked whether a person who spends up to one-third of his work day scratching and therefore is not able to use his hands for working would be an acceptable employee. (R. 532.) The VE responded that a person who was not doing productive work for more than 15 percent of the day would be considered incapable of performing work at an acceptable level. (R. 532.)

In September 2006, after remand from the Appeals Council, the ALJ conducted a second hearing to obtain additional medical evidence. Plaintiff's attorney agreed that the purpose of the second hearing was to update the previous testimony and not to replace it. (R. 435.) Plaintiff testified again that his alleged onset date of November 5, 2002, is based on the fact that he only worked part-time between that date and February 2003, and has not worked at all since February 2003. (R. 443.)

The ALJ questioned Plaintiff briefly regarding his past work and daily activities. Plaintiff testified that his blood pressure fluctuates despite taking three medications for hypertension. (R. 452.) Plaintiff also said that he takes prescription medications for itching, over-the-counter sinus medications and antacids, and Naproxin for pain. (R. 453-54.) Plaintiff testified that he underwent thirty-six therapeutic phlebotomies between April 2003 and August 2006 and was scheduled for two more in September 2006. (R. 456.) Plaintiff also testified that

he was having problems with his knees, back, and elbows, and had recently tested positive for rheumatoid arthritis. (R. 456-57.) Plaintiff stated he cannot pick up a coffee cup some mornings due to sore joints. (R. 457.)

Plaintiff's attorney then questioned him about the effects of the phlebotomies. Plaintiff testified that the trips to the Indianapolis VA hospital for phlebotomies take one whole day including travel, blood tests, and recovery time at the hospital. (R. 464.) Plaintiff testified that, including the one day in Indianapolis and two days of rest he needs afterward, he is unavailable for three days each time he receives a phlebotomy. (R. 464.) He also goes to Indianapolis once or twice a month for other doctor appointments. (R. 466.) When he was working, this caused him to be docked points. (R. 466.) Plaintiff testified that there is no cure for PCT. (R. 471.)

The VE also testified at the second hearing. After some discussion about excluding the dock supervisor position from Plaintiff's past relevant work, the ALJ based his hypothetical question on Dr. Gindi's second consultative report completed in May 2006. (R. 481.) The VE testified that a person with Plaintiff's background would have acquired skills from the receiving clerk position that would be transferable to sedentary positions. (R. 483.) These sedentary positions include production planning clerk, expediting clerk, records clerk, orders clerk, ticket checker, sedentary assembly jobs, and hand packaging jobs. (R. 485.) Some of these positions are unskilled, and so they do not require transferable skills, and some are semiskilled. According to the VE, all of the semiskilled positions have a "six point GOE match" with the receiving clerk position, meaning that the positions require very similar skill sets. (R. 486.)

In response to questioning by Plaintiff's attorney, the VE testified that some of the positions he identified have a "productivity standard," requiring the worker to be productive 80 percent of the time throughout the day, while some have an "on task" standard, requiring the worker to be on task 95 to 100 percent of the time when customers are present. (R. 488.) The VE testified that an individual would not be able to miss more than four days a month due to unscheduled call-ins and still retain employment. (R. 489.) He stated that an individual's "chances for employment would narrow quite drastically" if he had to miss a number of days

during the first 90 days of employment, during which time he would not be covered by the Family Medical Leave Act. (R. 492.) The VE did not provide specific statistics regarding Plaintiff's chances for maintaining employment, but testified that his studies indicate an employee cannot miss more than 18 to 24 days during the first year of employment. (R. 493.)

### D. The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1)(A). The Commissioner utilizes a five-step sequential evaluation to determine disability: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the Regulations; (4) whether the claimant has the residual functional capacity to perform past relevant work; and (5) if the claimant cannot perform her past relevant work, whether he can do other jobs that are available in the national economy. 20 C.F.R. § 404.1520(a)(4). Between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ followed this sequential evaluation in his decision. The following summary describes the ALJ's second (post-remand) decision, and the Court's subsequent analysis is based on that decision. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 7, 2003. (R. 17.) While the ALJ calls this Plaintiff's alleged onset date, Plaintiff alleges an onset date of November 5, 2002. (R. 169.) Second, the ALJ determined that

Plaintiff's hepatitis C, hypertension, and PCT constitute severe impairments, but concluded that the medical evidence did not support a finding that Plaintiff's rheumatism constitutes a severe impairment. (R. 17-18.) At step three, the ALJ determined that none of Plaintiff's severe impairments meet or equal the Listing requirements. (R. 18.) At step four, the ALJ determined Plaintiff had the RFC to lift, carry, push, or pull ten pounds occasionally and less than ten pounds frequently, and he can sit six hours of an eight-hour day and stand two hours of an eight-hour day. (R. 18.) The ALJ concluded that the medical evidence did not indicate any additional limitations. (R. 19.) Based on this RFC, Plaintiff would not be able to perform any past relevant work. (R. 22.) The ALJ also determined that Plaintiff's allegations regarding the extent of his symptoms from PCT were not fully credible, and that they were inconsistent with the available medical evidence. (R. 20.) At step five, the ALJ found that Plaintiff would be able to perform both unskilled and semiskilled work that is available in significant numbers in the national economy. (R. 23.) Accordingly, the ALJ denied Plaintiff social security benefits.

## II. Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g). When reviewing an ALJ's decision, this Court considers factual determinations with deference. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). This Court does not review the ALJ's findings *de novo* or substitute its own assessment for the ALJ's assessment. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, if "reasonable minds could differ" with regard to the Commissioner's findings of fact, then this Court must affirm the ALJ's decision. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

This Court "will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (citation omitted). However, reviewing courts have greater flexibility to review a credibility determination when it

rests on objective factors or fundamental implausibilities rather than on the ALJ's subjective observations. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III. Analysis
### A. Listing

Plaintiff first argues that the ALJ erred by determining that Plaintiff's PCT does not meet or equal the requirements listed in the Regulations under "Listing 8.00 – Skin Disorders." Plaintiff avers that the ALJ failed to adequately consider all of the necessary factors, specifically symptoms and treatment side effects. Plaintiff states that the ALJ did not account for the fact that he spends more than 20 percent of his day scratching despite treatment, and that each phlebotomy treatment leaves him weak and fatigued for twenty-four to forty-eight hours afterward. Plaintiff concedes that "the phlebotomies are effectively treating Plaintiff's PCT." (#13, p. 10.) However, he argues that the side effects of the phlebotomies and the constant scratching despite treatment render him unable to work. Plaintiff does not allege that he has "extensive skin lesions . . . involv[ing] multiple body sites or critical body areas" as described in the Regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(C)(1).

The Commissioner first responds by stating, "Plaintiff does not identify which skin disorder Listing he believes he meets. More importantly, however, PCT is not even one of the skin disorders considered to be severe enough to prevent an individual from engaging in substantial gainful activity under Listing 8.00." (#16, p. 6.) As the Commissioner's own brief states, however, the diseases enumerated in the Regulations are "only examples" of skin disorders that may render a claimant disabled, and a claimant is disabled if his ailment "medically equals the severity of a listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(H)(1). The Commissioner also avers that Plaintiff fails to specifically argue that his PCT "equals" a listing and, therefore, Plaintiff has waived that argument. While Plaintiff does not specifically make the argument in his heading, he does so in the body of the argument. The Regulations state that it suffices for an ailment to equal a listed impairment to render an individual disabled. *Id.* Therefore, the Commissioner's initial argument is not persuasive.

The Commissioner next argues that the ALJ's reasoning was sufficient to support a finding that Plaintiff's PCT does not meet or equal a listed impairment. In order to be medically equivalent, the claimant's condition must be equal "in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526. To medically equal a Listed impairment in severity and duration, a skin disorder must cause "extensive skin lesions" that "persist for at least 3 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(G). The ALJ's decision states that Plaintiff's PCT is controlled by phlebotomies that "prevent[] severe outbreaks of his skin disorder." (R. 18.) The medical record substantially supports this conclusion. (R. 180; 280; 286-87; 394.) Therefore, the Court concludes the ALJ did not err in his step three analysis.

## B.  RFC

Plaintiff next argues that the ALJ erred by incorrectly determining Plaintiff's RFC. Although Plaintiff argues that the ALJ's RFC determination was incorrect due to a faulty credibility determination, the Court will analyze the RFC and credibility assessment separately. The RFC is the ALJ's decision regarding what a plaintiff "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). That is, the ALJ determines what work Plaintiff is physically or mentally capable of performing despite his functional limitations. In the current case, the ALJ determined that Plaintiff maintained the RFC to lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently. Plaintiff can sit for six hours of an eight-hour day, stand and walk for two hours of an eight-hour day, and occasionally climb, balance, or kneel, but he cannot stoop, crawl, or use a ladder, rope, or scaffold. The ALJ based his decision on the consultative doctor's examination completed in May 2006, as well as the absence of restrictions imposed by any of Plaintiff's treating physicians. (R. 21.) The ALJ is correct when he states that the treating physicians' notes do not indicate any greater restrictions regarding Plaintiff's actual physical capabilities to lift, carry, sit, or stand, or perform other physical functions. Therefore, the Court concludes that the ALJ did not err in determining Plaintiff's physical RFC. The Court will address below whether the ALJ adequately considered Plaintiff's alleged symptoms and side effects of treatment.

### C. Transferable Skills

Plaintiff next argues that the ALJ erred when performing his step five analysis because he did not adequately determine what transferable skills Plaintiff actually acquired from past relevant work. Plaintiff contends that, based on his past relevant work as a receiving clerk *as he performed it*, he did not actually acquire the transferable skills that the VE identified based on the job description in the Dictionary of Occupational Titles (hereinafter "DOT"). Therefore, Plaintiff argues that the ALJ's step five determination was incorrect because it was based on transferable skills he could *potentially* have acquired. The Commissioner responds that the VE also identified unskilled positions that required no transferable skills, and that all of the semiskilled clerk positions he identified had a "6.0 GOE match," that is, high transferability. (#16, p. 16; R. 485-86.)

Plaintiff is correct that the ALJ must determine if the skills a claimant *actually* acquires at his past relevant work are the same as those identified in the DOT. *Key v. Sullivan*, 925 F.2d 1056, 1062-63 (7th Cir. 1991).

### D. Credibility

Plaintiff also argues that the ALJ erred when he assessed Plaintiff's credibility. The ALJ gave a variety of reasons for concluding that Plaintiff's statements regarding the effects of his impairments are not fully credible, including: (1) Plaintiff's daily activities are not as limited as expected; (2) medical records indicate that treatment generally controls his symptoms; (3) medical records do not indicate constant complaints of debilitating symptoms; (4) Plaintiff worked for a number of years with the impairment before claiming disability; (5) medical records do not indicate greater restrictions from a treating doctor; and (6) the only evidence regarding the extent of the effects of his impairments came from Plaintiff's testimony at the hearing and not the medical records. (R. 21-22.) The Seventh Circuit has outlined an extremely deferential standard of review regarding credibility. This Court will reverse the ALJ's findings on credibility only when they are patently wrong. *Powers*, 207 F.3d at 435. Furthermore, a court should conclude that a credibility determination is patently wrong only when it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

The Court has reviewed the ALJ's statements regarding Plaintiff's credibility and notes that the decision contains several mischaracterizations and factual errors. For example, the ALJ's statement that Plaintiff does not need "any particular help in maintaining his residence" (R. 21) is not supported by the evidence. The ALJ's statement that "the record indicates that the claimant did not develop photosensitivity" (R. 20) is also incorrect; in 2003, medical records state Plaintiff is "now symptomatic with photosensitivity" (R. 205). Furthermore, the fact that the VA records do not indicate Plaintiff complained about symptoms when he was specifically going in for treatment to relieve those symptoms does not undermine his credibility, especially when the record reflects some instances of complaints. (R. 191; 287; 291; 319; 334-35.) The fact that Plaintiff had PCT and still worked for a number of years before claiming disability does not undermine his credibility. The record shows that the PCT has gotten progressively worse and that Plaintiff began undergoing phlebotomies beginning in 2003, indicating that his symptoms worsened around that time.

The ALJ's credibility assessment acknowledged that Plaintiff had "medically determinable impairments [that] could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects" of Plaintiff's symptoms were not entirely credible. (R. 20.) A review of the ALJ's assessment shows that the ALJ focused on how Plaintiff's symptoms affected his physical RFC. To the extent that the ALJ considered Plaintiff's credibility in light of his physical limitations, the Court cannot say that the credibility assessment was patently wrong.

However, the ALJ did not take into account the fact that Plaintiff is unable to work for a full day while undergoing his treatments and for twenty-four to forty-eight hours after the treatment due to the debilitating effects of the phlebotomies. Because the Court considers this issue in detail in the next section, it will not address it in the context of credibility.

### E.  Incomplete Hypothetical

Plaintiff next argues that the ALJ's hypothetical question to the VE was inadequate because it failed to account for Plaintiff's symptoms of fatigue and itching and his absences from work for medical treatment.

While the ALJ considered Plaintiff's complaints of constant itching and scratching, finding them not fully credible, he did not address the negative side effects of, and time needed for, the actual phlebotomy treatment and recovery.  (R. 20.)  The ALJ acknowledged that Plaintiff's treatment for PCT involves traveling to Indianapolis for phlebotomies, but he did not specifically address Plaintiff's inability to work on the days that he has treatment or during his the recovery period after treatment.  Plaintiff testified that the phlebotomies leave him so weak and fatigued that he cannot function for more than forty-eight hours every time he receives treatment.  (R. 464.)  This testimony is consistent with instructions from his doctors that stated he may feel very weak and fatigued after treatment and require him to be supervised for the first twenty-four hours after treatment in case he loses consciousness.  (R. 418-19.)

In the Western District of Missouri, the district court considered the issue of treatment time as it related to a claimant with PCT and found that the ALJ insufficiently accounted for the claimant's need to miss work due to phlebotomy treatment.  *Roach v. Shalala*, No. 91-6109-CV-SJ-6, 1993 WL 379399, *5 (W.D. Mo. July 22, 1993) (unreported); *see also Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987) (remanding a case because the ALJ failed to evaluate the effect of frequent hospitalizations on the plaintiff's ability to perform any work on a regular basis); *Spears v. Apfel*, No. Civ. 99-461-JD, 2000 WL 1507440, *7 (D.N.H. July 20, 2000) (unreported) (criticizing an ALJ who "gave no reason [for failing] to consider the time required for treatment and side effects of the medication being used for Spears's psoriasis").

District court cases in the Seventh Circuit generally support the proposition that an ALJ should consider the time a claimant will miss work when determining a claimant's ability to perform past relevant work or work in the national economy.  *See Carter v. Astrue*, No. 06-C-4521, 2007 WL 2804889, *4 (N.D. Ill. Sept. 20, 2007) (unreported) (remanding in part for the

ALJ to address the question of whether a claimant's impairments required her to miss work and whether that would prevent her from performing work). If the ALJ discounts such evidence, he must have some basis for doing so. *Murphy v. Barnhart*, 417 F. Supp. 2d 965, 972 (N.D. Ill. 2006) (finding the ALJ must take into account missed days or explain why he fails to do so); *Simpson v. Barnhart*, 91 Fed. App'x 503, 506 (W.D. Wis. 2004) (finding the ALJ did not err when he discounted a treating physician's opinion that was inconsistent with the substantial evidence).

Here, the ALJ stated that Plaintiff's PCT was "well-controlled" as a result of his regular phlebotomy treatments. (R. 18.) The ALJ used this information, as well as other information, in assessing Plaintiff's RFC. However, the ALJ did not take into account the time it takes Plaintiff to undergo and recover from the treatments when he considered Plaintiff's ability to engage in substantial gainful activity. This is particularly significant in this case. *See Chiappa v. Sec'y of Dep't of Health, Ed. & Welfare*, 497 F. Supp. 356, 360 (S.D.N.Y. 1980) ("The extent to which a disability may prevent regular work attendance is a relevant factor in determining whether a claimant is able to engage in substantial gainful activity."). The ALJ relied on the beneficial effects of the treatment when determining Plaintiff's RFC; he must also take into account the time Plaintiff spends receiving and recovering from treatment. Here, the ALJ did not include information on the required absences for treatment and recovery in the hypothetical questions to the VE. Because of the substantial time involved in undergoing and recovering from treatment in this case, this error constitutes grounds for remand.

The ALJ acknowledged Plaintiff has phlebotomies at least once a month and "no more than twice a month." (R. 20.) The record shows Plaintiff underwent ten therapeutic phlebotomies between January and August 2006 (R. 172) and he was scheduled for two treatments in September (R. 464). Based on the ALJ's acknowledgment that Plaintiff needed treatment at least once a month, by the end of 2006, Plaintiff would have undergone fifteen phlebotomies. In addition, the medical record shows that Plaintiff must be supervised for at least twenty-four hours after treatment so he cannot work the day after his treatment. Thus, it is undisputed that Plaintiff cannot work for at least two days every time he undergoes a phlebotomy

(the day of treatment plus one day for recovery). Plaintiff testified that he cannot work for two days after each treatment; however, even assuming that he had to miss only one day for recovery, Plaintiff would miss 30 days in 2006. The VE testified that his studies showed an employer would allow an employee to miss between eighteen and 24 days during the course of a year. (R. 493.) By implication, an individual who had to miss more than 24 days a year due to medical treatment would be unable to engage in substantial gainful activity.

The Court has authority to affirm, reverse, or modify a final decision of the Commissioner, with or without remand. 42 U.S.C. § 405(g), sentence 4. Remand for reconsideration by an ALJ is appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). However, when all essential factual issues have been resolved and the record clearly establishes that the plaintiff is entitled to benefits, a judicial award of benefits is proper. *See, e.g. Campell*, 988 F.2d at 744. Here, the ALJ's acknowledgment that Plaintiff undergoes at least one phlebotomy treatment a month, and sometimes two, along with the undisputed evidence that Plaintiff cannot work for at least two days every time he undergoes treatment, mandates a finding that Plaintiff is disabled. A remand for further evidentiary proceedings would serve no purpose, and the Court concludes that reversal of the Commissioner's decision and entry of judgment for Plaintiff is appropriate. Therefore, the Court recommends remand for the purpose of computing an award of benefits.

### IV.  Summary

For the reasons set forth above, this Court recommends **GRANTING** Plaintiff's Motion for Summary Judgment **(#12)**. The ALJ's decision should be reversed and remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings consistent with this recommendation. Remand pursuant to 42 U.S.C. § 405(g), sentence four, will terminate the case. *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (a sentence-four remand order terminates the case).

The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten working days after service of a copy of this recommendation. *See* 28 U.S.C. 626(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 22nd day of August, 2008.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE